# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:  Case No. A10-00824-DMD | Chapter 11 |
| NAKNEK ELECTRIC ASSOCIATION, INC., | |
| Debtor. | |
| | |
| BAKER HUGHES OILFIELD OPERATIONS, INC., and BJ SERVICES COMPANY, U.S.A., | Adv. No. A11-90007-DMD |
| Plaintiffs, | |
| v. | |
| NATIONAL RURAL UTILITIES COOPERATIVE FINANCE CORPORATION, NAKNEK ELECTRIC ASSOCIATION, INC., COBANK, ACB, WORKSTRINGS, LLC, TECTON GEOLOGIC, LLC, CENTRIFUGE SERVICES, LLC, TIW CORPORATION, BC CONTRACTORS, INC., and GBR EQUIPMENT, | |
| Defendants. | |

**Filed On 3/21/12**

## MEMORANDUM ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Motions for partial summary judgment on the priority of certain statutory liens have been filed by the plaintiffs and by defendant TIW Corporation ("TIW"). Defendants Tecton Geologic, LLC, GBR Equipment, Inc., Centrifuge Services, LLC, and Larry Compton, as chapter 7 trustee for BC Contractors, Inc., have joined in the plaintiffs' motion.

A motion for summary judgment has also been filed by defendant and cross-claimant National Rural Utilities Cooperative Finance Corporation ("CFC"). Having considered the motions, joinders, oppositions and responses thereto, I conclude that the plaintiffs' motion for partial summary judgment, and the joinders thereto, should be granted, in part. TIW's motion for partial summary judgment should be granted on the same basis as the plaintiffs' motion. CFC's motion will be denied.

Factual Background

Debtor Naknek Electric Association, Inc., is an electric utility cooperative that serves members in the remote western Alaska communities of King Salmon and Naknek. The debtor uses diesel fuel to generate electricity. Because of the significant increase in the price of diesel fuel from 2005 to 2008, the debtor decided to pursue geothermal power as a supplemental method to provide electric power to its members. In mid-2009, it obtained a permit to conduct geothermal drilling operations on property that it owned in Naknek, Alaska. It acquired a drilling rig (Rig No. 7), improved it, and transported it to the property. Once the rig was assembled and positioned on the site, the debtor started drilling an exploratory well.

The debtor incurred substantial debt in its efforts to drill and develop a successful well. Its efforts were thwarted by many factors. Anticipated grant funds were not received, and compliance with regulatory requirements was costly. Other factors also affected the successful development of the well.

2

The debtor filed a chapter 11 petition on September 29, 2010.  By the time its petition was filed, several statutory liens had been recorded by contractors and vendors who had provided services, equipment or materials in connection with the development of the exploratory well.  Additionally, two of the debtor's largest creditors, CoBank and Baker Hughes, had obtained and recorded judgments against it.  Naknek filed its chapter 11 petition to stay further collection efforts against it and to preserve its rights to avoid the CoBank and Baker Hughes judgments as preferential transfers.

The instant adversary proceeding was commenced on April 19, 2011.  It involves a lien priority dispute between the entities claiming statutory liens against the well and Rig No. 7, and CFC, which has a security interest in the rig.  CFC filed a financing statement with the UCC Central Filing Office on October 14, 2009, that describes Rig No. 7 as its collateral.  The plaintiffs, Baker Hughes and BJ Services, claim mining liens against the well and Rig No. 7 under AS 34.35.125, *et seq.*  They recorded lien notices in the Kvichak Recording District, where the rig and well are located, on July 21, 2010, and May 7, 2010, respectively.  The other named defendants in this proceeding (excluding the debtor and CFC) also claim statutory liens against the well and rig.[1]  The pending summary judgment motions address the validity of the plaintiffs' mining liens and the issue of priority between those liens and CFC's security interest.

---

[1] TIW Corporation and GBR Equipment also claim mining liens.  Defendants BC Contractors, Centrifuge Services, LLC, and Tecton Geologic claim mechanics' liens under AS 34.35.050 and 34.35.070. Defendant CoBank, ACB, has agreed not to contest the validity of plaintiffs' liens in this proceeding, and defendant Workstrings, LLC, has not answered or appeared.

3

Summary Judgment Standard

> Fed. R. Civ. P. 56(a), which is applicable to adversary proceedings,[2] provides:

> > **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.[3]

"Interpretation of the statutory requirements for a valid lien is a question of law . . . [and] whether those requirements are met is a question of fact."[4] Here, the material facts are embodied in the recorded lien notices and CFC's recorded financing statement. The pending motions can be resolved by applying the pertinent lien statutes to those notices.

The Summary Judgment Motions

Three summary judgment motions have been filed in this proceeding and are now ripe for ruling. The plaintiffs filed a motion for partial summary judgment on

---

[2] Fed. R. Bankr. P. 7056.

[3] Fed. R. Civ. P. 56(a).

[4] *Lakloey, Inc. v. Ballek*, 211 P.3d 662, 664 (Alaska 2009).

November 21, 2011.[5]  The sole issue to be determined is whether their statutory liens take priority over CFC's security interest in Rig No. 7.  The plaintiffs contend their liens take priority pursuant to AS 34.35.135 because CFC never recorded notice of its lien in the Kvichak Recording District.  They also say their liens prime CFC's interest in any event because the liens relate back to the date they started work on the well.  The plaintiffs started work on the project in August of 2009, two months before CFC filed its financing statement.

CFC's motion for summary judgment was filed on November 21, 2011.[6]  CFC says its financing statement primes the plaintiffs' statutory liens against the rig.  Its argument has three prongs.  First, CFC contends the geothermal well is outside the scope of AS 34.35.130, one of the statutes under which the plaintiffs claim liens.  CFC also contends the plaintiffs' liens against Rig No. 7 are invalid, because only claims for labor may attach to the rig and the plaintiffs' lien notices did not separately list the costs for labor attributable to the rig alone.  Finally, CFC says its lien has priority because it filed its financing statement before any of the statutory liens were recorded.  Although CFC's motion is directed to the plaintiffs' claims, it takes the same position with regard to all other parties in this proceeding who claim to have a statutory lien against Rig No. 7.[7]

---

[5] Pls.' Mot. for Partial Summ. J., filed Nov. 21, 2011 (Docket No. 57).

[6] CFC's Mot. for Summ. J. to Determine Priority of its Lien, filed Nov. 21, 2011 (Docket No. 59).

[7] *Id.* at 2 n.2.

5

Defendant TIW filed its motion for partial summary judgment on November 22, 2011.[8]  TIW also claims a mining lien against the rig. However, its work on the project commenced after CFC's financing statement was filed.  TIW's motion advances the same argument as the plaintiffs'; it contends its lien is prior to CFC's under AS 34.35.135 because CFC never recorded notice of its security interest in the Kvichak Recording District. The defendants who have joined in the plaintiffs' motion seek summary judgment on this point as well.  The plaintiffs are the only statutory lien claimants who commenced work on the well prior to the date CFC's security interest was recorded.

The Applicable Lien Statutes

The plaintiffs claim liens against both the well and Rig No. 7.  AS 34.35.125 provides for liens on mines and wells:

> A person who, at the instance of the owner, performs work in, on, or about a mine, or mining claim, oil, gas, or other well, in opening up, developing, sinking, drilling, drifting, stoping, mucking, stripping, shoveling, mining, hoisting, firing, cooking, teaming, or performs any other class or kind of work necessary or convenient to the development, operation, working, or mining of the claim or well; or who performs work tending to or assisting in the development, extraction, separation or reduction to commercial value of the minerals; or who performs work on a water right, ditch, flume, pipe line, tramway, tram, road, or trail, used in connection with the opening

---

[8] TIW's Mot. for Partial Summ. J., filed Nov. 22, 2011 (Docket No. 61).

6

up, or to facilitate the opening up, operation, or development of the claim or well, or the extraction of the minerals, has a lien on the mine or mining claim, oil, gas, or other claim or well as security for the payment of the work.[9]

AS 34.35.130 provides for a lien on a mill or machine:

A person who, at the instance of the owner, performs work or labor on, in, or about a mill or machine, either in the alteration or repair of it, or in the operation or working of it, while the mill or machine is used in or about a mine, or mining claim, oil, gas, or other claim or well, as a means of opening up, developing, or mining, or as a means of separating, extracting, or reducing minerals to commercial value, has a lien on the mill or machine, to secure the payment of the amount due for the work.[10]

These statutes permit liens on two different classes of property.  Both are defined in AS 34.35.170(a):

(2) "mill" or "machine" includes a . . . drill, . . . or other mill, concentrator, conveyor, elevator, or other machinery used in or about a mine in digging, hoisting, conveying, washing, or blocking out mineral contents, or reducing the mineral contents to a commercial value, while the mill or machine is used in connection with the operation of the mine, and is not a fixture and included in the term "mine" as defined in this section;

---

[9] AS 34.35.125.

[10] AS 34.35.130.

7

(3) "mine" or "mining claim" means a block or parcel of mining ground, consisting of a part of a mining location, a mining location, or two or more contiguous mining locations, or an oil, gas, or other well or claim, possessed and held under one ownership, or mined under one management and worked through a common shaft, tunnel, incline, pit, well, or other opening, or over one tram; and all valuable mineral deposits, including coal, oil, gas, or other fluid, and all lodes, veins, or rock in place containing minerals; and all shafts, tunnels, stopes, ways, and other openings, roads, appliances, machinery, timbering, and structure below the surface of the ground; and all structures, buildings, mills, and machines on the surface of the ground and affixed to the ground and used in the working, mining, and development; and all ditches, water rights, pipelines, roads, trams, flumes, and other appurtenances[.][11]

The plaintiffs assert priority of their liens on the basis of AS 34.35.135, which

provides:

A lien under AS 34.35.125 and 34.35.130 is a preferred lien, prior and superior to a mortgage, conditional sale agreement, attachment, claim, or demand, unless the mortgage, conditional sale agreement, attachment, claim, or demand is in writing and recorded in the recorder's office of the recording district where the property is located before the work for which the lien is claimed is started. A sale, transfer, mortgage, assignment, or attachment made or filed for record after the work

---

[11] AS 34.35.170(a)(2)-(3).

8

is started does not have the effect of postponing the lien.[12]

## Construction of Lien Statutes

"The intent of [AS 34.35] is remedial and its provisions shall be liberally construed."[13]  Further, a "mistake in formality or lack of statement in the lien notice . . . is not ground for dismissal or unnecessary delay in an action to foreclose a lien."[14]

(b)  Substantial compliance with the law relating to the contents of the lien notice is considered sufficient, if the notice satisfactorily shows the name of the claimant, the amount of the demand, the time of the employment, the property sought to be charged with the lien sufficient for identification, and the name of the owner or reputed owner of the property.

(c)  The inclusion of nonlienable items in the amount of the claimant's demand or error in the terms and conditions of the contract of employment, if there is a contract of employment, or other error in the lien notice, made in good faith, is not considered material, unless the error affects the substantial rights of the adverse party, acquired in good faith without notice.

(d)  The lien notice and pleadings may be amended at any time before judgment.  If a material statement or averment is omitted or

_____

[12] AS 34.35.135.

[13] AS 34.35.930.

[14] AS 34.35.020(a).

9

> misstated, this is ground for a reasonable delay or
> continuance to enable opposing parties to meet
> the amendment, and a nonsuit or dismissal may
> not be entertained in the action except upon the
> merits of the cause.[15]

These provisions are applicable to the foreclosure of any lien claimed under AS 34.35, including the liens at issue here.

## The Plaintiffs are Entitled to Claim a Lien Under AS 34.35.130

Although lien statutes are to be liberally construed, "the determination of who qualifies as a lienholder is strictly construed."[16]   AS 34.35.125 and 34.35.130 list the conditions under which a person may claim a lien against a well or drill.  These statutes must be strictly construed because they contain "mandatory conditions precedent" to the creation of such liens.[17]

CFC argues that the plaintiffs cannot claim a valid lien against Rig No. 7 under AS 34.35.130 because they have not satisfied all of the requirements of the statute.  In making this argument, CFC breaks the text of AS 34.35.130 into eight elements:

[1] a person who,

[2] at the instance of the owner,

---

[15] AS 34.35.020(b)-(d).

[16] *Nerox Power Sys. v. M-B Contr. Co., Inc.*, 54 P.3d 791, 800-801 (Alaska 2002).

[17] *Lakloey, Inc.*, 211 P.3d at 665-66.

10

[3] performs work or labor

[4] on, in or about a mill or machine,

[5] either in the alteration or repair of it, or in the operation or working of it,

[6] while the mill or machine is used in or about a mine, or mining claim, oil, gas, or other claim or well,

[7] **as a means of opening up, developing, or mining, or as a means of separating, extracting, or reducing**

[8] **minerals to commercial value.**[18]

CFC says the plaintiffs are foreclosed from claiming a lien under AS 34.35.130 because they cannot satisfy the eighth element. Specifically, CFC says water is not a mineral and, even if it were, the water taken from the well was not developed to commercial value.[19] Thus, it is impossible for the plaintiffs to satisfy the statutory requirements to claim a lien on CFC's collateral, Rig No. 7.

In construing the meaning of a statute, the court looks to "the meaning of the language, the legislative history, and the purpose of the statute in question."[20] The Alaska Supreme Court provides the following guidance:

---

[18] CFC's Mot. for Summ. J. (Docket No. 59), at 9 (emphasis in original).

[19] *Id*. at 7.

[20] *Gov't Emp. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005) (citations omitted).

11

> "The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."   "Because this is a case of first impression in this state, '[o]ur duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.'"
>
> . . . .
>
> We have rejected a mechanical application of the plain meaning rule in matters of statutory interpretation, and have adopted a sliding scale approach instead.   The plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.[21]

Under CFC's interpretation of AS 34.35.130, a mineral must be reduced to commercial value as a precondition to claiming a lien against a mill, machine, or drill.  This would foreclose a lien for any type of exploratory drilling unless it culminated in a commercially successful well or mine.  Considering the remedial nature of the lien statutes, I do not find this interpretation persuasive.

First, looking to CFC's sixth element, a lien will arise for work performed "while the mill or machine is used in or about a mine, or mining claim, *oil, gas, or other claim or well*."[22]  A geothermal well falls within the scope of this phrase.[23]  It serves

---

[21] *Id.*, *citing Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787-88 (Alaska 1996).

[22] AS 34.35.130 (emphasis added).

[23] The plaintiffs have very adequately addressed this point.  *See* Pls.' Mem. in Supp. of Mot. for Partial Summ. J., filed Nov. 21, 2011 (Docket No. 58), at 7-8.

essentially the same purpose as an oil or gas well – to access an energy resource.  When an exploratory well is drilled for any one of these energy resources, it may or may not result in success.  CFC says the debtor's unsuccessful geothermal well was simply a water well, not within the scope of AS 34.35.130.  Under CFC's reading of the statute, an unsuccessful exploratory oil or gas well would become just a hole in the ground and those who worked on the project would not be able to claim a lien under the statute.  This result-driven interpretation of the statute thwarts the remedial goal of the lien statutes.

Further, CFC's contention that water is not a mineral is unpersuasive when one considers that the *purpose* of an exploratory geothermal well is to access water as an energy resource.  I feel that water under such circumstances is an "inorganic substance" within the definition of "mineral" found in AS 34.35.170(a)(4).  Under AS 34.35.170(a)(4), "mineral" is defined to include "coal, oil, gas, and inorganic substances subject to location, appropriation, acquisition, or enjoyment under the laws of the United States or the state." [24] Water in a geothermal well is an inorganic substance subject to acquisition under the laws of Alaska.  The plaintiffs have addressed this issue extensively and I agree with their position.[25]  The water in the geothermal well is a mineral within the context of the mining lien statutes.

---

[24] AS 34.35.170(a)(4).

[25] Pls.' Reply to CFC's Resp. to Pls.' Mot. for Summ. J., filed Dec. 19, 2011 (Docket No. 73), at 7-12.

13

Additionally, the lien rights extended under AS 34.35.130 do not depend on the commercial success of the project.  This becomes clear when CFC's seventh and eighth elements are examined.  CFC breaks out these statutory elements at the wrong juncture.  Its interpretation might be supported if a comma were placed after "or reducing," so that the statute reads as follows:

> [7] as a means of opening up, developing, or mining, or as a means of separating, extracting, or reducing,
>
> [8] minerals to commercial value.

But no comma has been placed there.  To more correctly paraphrase the statute, it permits a lien if a mill or machine is being used in or about a mine "as a means of [X] *or* as a means of [Y]."  In other words, CFC's seventh and eighth elements are more appropriately broken out as follows:

> [7] *as a means of* opening up, developing, or mining,
>
> [8] **or** *as a means of* separating, extracting, or reducing minerals to commercial value.

Because the word "or" separates the seventh and eighth elements, they are in the disjunctive.  Only one of the two elements must be satisfied for a valid lien.  Adopting this more natural reading of the statute:

> A person who . . . performs work or labor on, in, or about a mill or machine, . . . in the operation or working of it, while the mill or machine is used in or about a mine . . . or well, as a means of opening

14

up, developing, or mining, . . . has a lien on the
mill or machine, to secure the payment of the
amount due for the work.[26]

This reading of the statute is consistent with AS 34.35.125, which extends a lien on mines

or wells to a person "who performs work tending to or assisting in the development,

extraction, separation *or reduction to commercial value* of the minerals."[27]  Clearly, under

this statute, a person who works on a mine or well to develop, extract or separate minerals

is entitled to claim a lien, as is a person who assists in reducing minerals to commercial

value.  When construing a statute, "all sections of an act are to be construed together so that

all have meaning and no section conflicts with another."[28]  Neither of the mining lien statutes

precondition a lien upon the reduction of minerals to commercial value alone.  Rather, this

is just one of several kinds of work that will give rise to a mining lien.

The plaintiffs' lien notices expressly state that their liens are claimed against

both the well and the rig, and otherwise substantially comply with the claim of lien

requirements found in AS 34.35.160.  The lien notices, with their detailed appended invoices,

and the supporting affidavits filed herein, establish that the plaintiffs have performed the type

of work which would entitle them to claim a lien under AS 34.35.130.[29]  The plaintiffs are

---

[26] AS 34.35.130.

[27] AS 34.35.125 (emphasis added).

[28] *Nelson v. Municipality of Anchorage*, 267 P.3d 636, 642 (Alaska 2011), *citing In re Hutchinson's Estate*, 577 P.2d 1074, 1075 (Alaska 1978).

[29] *See* Pls.' Mot. for Partial Summ. J. (Docket No. 57), Exs. 1 - 4; Pls.' Resp. to CFC's Mot. for Summ. J., filed Dec. 9, 2011 (Docket No. 69), Exs. 8 and 9.

15

entitled to claim a lien against the rig regardless of whether they reduced minerals to commercial value or not.

The Sufficiency of the Plaintiffs' Lien Notices

CFC says the plaintiffs' lien notices are defective because they do not separately state the amount claimed for labor against each class of property – the well and the drill – to be encumbered by the lien. CFC points to the following language found in each of the plaintiffs' lien notices:

> [Plaintiff] has, under contract, furnished materials and equipment and/or performed labor and services for and in connection with a mine, or mining claim, oil, gas, or other well, in opening up, developing, sinking, drilling, drifting, stoping, mucking, stripping, shoveling, mining, hoisting, firing, cooking, and/or teaming, which was necessary or convenient to the development, operation, working, or mining of the claim or **well**.[30]

CFC contends the plaintiffs' liens are limited to the well, based upon this broad description of the work found in the lien notices.

CFC bases its argument on AS 34.35.155, which provides:

> (a) Liens under AS 34.35.125 – 34.35.170 are not exclusive of one another. The lien shall attach and may be claimed by the same labor upon the mine, mining claim, mill, or machine used in

---

[30] CFC's Mot. for Summ. J. (Docket No. 59), at 17 (emphasis by CFC).

16

mining or working, . . . if the facts relative to the labor warrant.

(b)  A lienor may claim a lien on one or more of the different classes of property subject to a lien for the same labor if

(1)  **the amount claimed against each class of property is separately stated**;

(2)  the property sought to be charged is described so that it can be identified; and

(3)  the name of the owner or reputed owner is given.[31]

CFC says this statute must be strictly construed because it contains "mandatory conditions precedent" to the creation of the lien,[32] and concludes that the defects in the lien notices are fatal.

I disagree with CFC's position.  The statutes which determine *who* may claim a lien are to be strictly construed.[33]  In my view, the statutes which define who may claim a mining lien are AS 34.35.125 (liens on mines and wells) and AS 34.35.130 (liens on mills and machines).  AS 34.35.155, on the other hand, provides that these liens are not exclusive, so long as the lien claimant identifies each class of property to be encumbered.  This provision is remedial in nature and should be liberally construed.  The Alaska statutes are

---

[31] AS 34.35.155 (emphasis by CFC; *see* Docket No. 59 at 16).

[32] CFC's Mot. for Summ. J. (Docket No. 59), at 16.

[33] *Nerox Power Sys.*, 54 P.3d at 800-801; *see also D.H. Blattner & Sons, Inc., v. N.M. Rothschild, Ltd.*, 55 P.3d 37, 45 n.20 (Alaska 2002).

17

explicit that a mistake in formality or lack of statement in a lien notice is not fatal.[34]  A lien notice is sufficient if it "satisfactorily shows the name of the claimant, the amount of the demand, the time of the employment, the property sought to be charged with the lien sufficient for identification, and the name of the owner or reputed owner of the property."[35] The plaintiffs' lien notices contain all of this information and include copies of detailed invoices that itemize all of the work the plaintiffs performed.  Additionally, the plaintiffs have submitted affidavits which rebut CFC's contention that the plaintiffs' work was performed on the well alone.[36]

The plaintiffs have adequately supported their lien claims.  They may correct errors or omissions in their lien notices at any time before entry of judgment.[37] The inclusion of nonlienable items in a lien notice, or the failure to segregate items in a lien notice, "does not automatically necessitate the voiding of [a] claimant's entire lien."[38]  The Alaska Supreme Court has declined to follow authorities from other jurisdictions which have found otherwise.[39]  Instead, the trial court must determine whether the errors in the lien notice were made in good faith, and whether substantial rights of adverse parties were affected by the

---

[34] AS 34.35.020(a).

[35] AS 34.35.020(b).

[36] *See* Affs. of I. Paterson and R. Edwards, filed as Exs. 8 and 9 to Pls.' Resp. to CFC's Mot. for Summ. J. (Docket No. 69).

[37] AS 34.35.020(d).

[38] *Moores v. Alaska Metal Buildings, Inc.*, 448 P.2d 581, 586 (Alaska 1968).

[39] *Id.* at 586 n.16.

error.[40]  CFC does not attack the plaintiffs' liens on either of these grounds.  Further, these are factual issues beyond the scope of summary judgment.

CFC urges a constrictive reading of AS 34.35.155 which would only permit the "labor" portion of a mining lien to attach to more than one class of property.  But such a narrow interpretation would diminish the scope of the liens that are granted for "work" under the mining lien statutes.  Both AS 34.35.125 and 34.35.130 secure payment for *work*.[41] Further, the terms "labor" and "work" are used interchangeably in AS 34.35.  For example, AS 34.35.150 is titled "*Labor* deemed performed at instance of owner, mortgagee, or lien claimant," but the body of the statute refers to "*work* mentioned in AS 34.35.125, 34.35.130, and 34.35.140," and does not again mention "labor."[42]  AS 34.35.160(b)(5) specifies that a claim of lien must include "the date of starting and stopping *work*,"[43] but does not require that the start and end dates for *labor* also be provided.  AS 34.35.160(c) states that "[i]f there is no express contract of employment, the claim must state the reasonable value of the *work and services*"[44] but again fails to mention *labor*.

---

[40] *Id.* at 586; *see also* AS 34.35.020(d).

[41] Per AS 34.35.125, a person who "performs *work* in, on, or about a mine . . . or well" has a lien upon the mine or well "to secure payment for the *work*" and, under AS 34.35.130, one who "performs *work or labor* on, in or about a mill or machine" has a lien upon the mill or machine "to secure the payment of the amount due for the *work*."

[42] AS 34.35.155 (emphasis added).

[43] AS 34.35.160(b)(5) (emphasis added).

[44] AS 34.35.160(c) (emphasis added).

19

In fact, the words "work" and "labor" are synonymous. Neither term is defined in AS 34.35. "In assessing statutory language, 'unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage.'"[45] Black's Law Dictionary defines "labor" as "work of any type, including mental exertion."[46] One definition of "work" is "[t]o exert effort; to perform, either physically or mentally."[47] Both "work" and "labor" include physical and mental exertion. The distinction between "labor" and "work" urged by CFC is meaningless.

As used in the mining lien statutes, "work" encompasses more than the cost of physical labor alone, and includes the costs for equipment and supplies needed for efficient functioning of the worksite.[48] In discussing this point, the Alaska Supreme Court found that a lien given to "secure the amount due the *laborer* in the production of the minerals"[49] will

---

[45] *Gov't Empl. Ins. Co. v. Graham-Gonzalez*, 107 P.3d at 284 (citation omitted).

[46] *Black's Law Dictionary* 952 (9th ed. 2009).

[47] *Id.* at 1744.

[48] *D.H. Blattner & Sons,* 55 P.3d at 47-48.

[49] AS 34.35.140(a) (emphasis added). The full text of subsection (a) is:

> A person who, at the instance of another who has the right of possession of a mine, or mining claim, oil or gas well, performs upon, in, or about the mine or well any of the kinds of *work* mentioned in AS 34.35.135, or who performs any other kind of work in the production, piling up, or storing of a dump or mass of mineral, has a lien on the dump or mass, and the gold, gold dust, or other minerals contained in or extracted from it, to secure the amount due *the laborer* in the production of the minerals (emphasis added).

20

include not only the cost of human labor, but necessary equipment and supplies as well.[50]

The court recognized that the mining statutes were adopted in Alaska's territorial days,[51] and

did not reflect the realities of contemporary mining, where "heavy machinery has, to a

significant extent, replaced physical labor."[52]

> Gone are the days of an army of pickaxes. To the
> extent that the legislature may long ago have
> meant to protect physical laborers by providing a
> lien on the dump produced by their labor in case
> they were not paid for those efforts, so should
> today's provider of heavy machinery be
> compensated for the work those machines
> supply.[53]

Considering this perspective, the narrow interpretation of AS 34.35.155 urged by CFC is

unpersuasive. It would have the effect of restricting the scope of the liens granted for "work"

under AS 34.35.125 and 34.35.130 to physical labor alone, thereby thwarting the remedial

intent of the lien statutes.

The plaintiffs' liens are not invalid for lack of compliance with AS

34.35.155(b)(1). Substantial compliance is all that is required.[54] The plaintiffs, having

satisfied this standard, hold valid liens against Rig No. 7 under AS 34.35.130.

---

[50] *D.H. Blattner & Sons,* 55 P.3d at 47-48.

[51] *Id.* at 40.

[52] *Id.* at 47.

[53] *Id.*

[54] AS 34.35.020(b).

Rig No. 7 is Not Affixed to the Well for Purposes of AS 34.35.125

In their response to CFC's motion for summary judgment, the plaintiffs raise the argument that their liens against the *well* under AS 34.35.125 would cover the rig in any event.   This argument rests on the definition of "mine or mining claim" found in AS 34.35.170(a)(3).  A mine or mining claim encompasses not only a "well"; it also includes "all structures, buildings, mills, and machines on the surface of the ground and affixed to the ground and used in the working, mining, and development" of the project.[55]   There is no question here that the rig was situated on the surface of the ground and used for development of the well.  But was it "affixed" to the ground?  The plaintiffs say it was, and provide an affidavit to support this contention.[56]  CFC responds that the rig was not permanently affixed to the ground and is a portable, movable piece of equipment.  I agree with CFC.

The definitions for both "mines" and "machines" must be considered here.  A "mine" is defined to include structures affixed to the ground.[57]  Under AS 34.35.170(a)(2), a "machine" is used in the operation of a mine, but it "is not a fixture and included in the term "mine."[58]  Reading these sections together so that they have meaning and do not conflict

---

[55] AS 34.35.170(a)(3).

[56] Pls.'s Mot. for Summ. J. (Docket No. 57), Ex. 3 (Aff. of I. Paterson).

[57] AS 34.35.170(a)(3).

[58] AS 34.35.170(a)(2).

with one another,[59] only machines which are fixtures are encompassed within the definition of "mine" and subject to a mining lien claimed against the mine under AS 34.35.125.

A fixture is defined in Black's Law Dictionary as "[p]ersonal property that is attached to land or a building and that is regarded as an irremovable part of the real property, such as a fireplace built into a home."[60]  Pre-existing state property law, rather than the UCC, determines whether a particular item is a fixture.[61]  Under state law, three factors should be considered in determining whether an item is a fixture:  "the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment."[62]

The plaintiffs argue that Rig No. 7 was affixed to the ground by several means. They say it was affixed by virtue of its massive weight, approximately 3.5 million pounds. The sheer weight of the rig does not attach it permanently to the real property, however.  The rig was moved to its current site through use of heavy equipment, and it can be taken apart and moved again.

The plaintiffs also maintain the rig was affixed because it was attached to the casing wellhead at the surface of the ground.  This method of attachment was temporary. The well will soon be capped.  The rig will be detached, sold and moved to a new site.  The

---

[59] *See Nelson v. Municipality of Anchorage*, 267 P.3d at 642.

[60] *Black's Law Dictionary* 713 (9th ed. 2009).

[61] *K & L Distrib., Inc. v. Kelly Electric, Inc.*, 908 P.2d 429, 432 (Alaska 1996).

[62] *Id., citing Hayes v. Alaska Juneau Forest Indus., Inc.,* 748 P.2d 332, 336 (Alaska 1988).

23

drill string, collars and top drive, although very heavy objects, also fail to affix the rig to the ground.  These objects can and will be moved following the sale of the rig.

The plaintiffs further contend that the rig is attached to the ground through encased sidetrack holes.  These holes provide no more connection than the casing wellhead at the surface.  When the rig is moved, it will be detached from the wellhead and any sidetrack holes.  The sidetrack holes do not provide a means of permanently securing the rig, nor do the guy wires attached to the rig's derrick.  Although these are driven into the ground, they can be removed before the rig is transported to a new site.  For the same reason, the electrical lines running to the rig do not provide a means of affixing the rig to the ground.  In sum, none of the means by which the rig is attached to the ground are permanent in the sense that the rig became an irremovable part of the real property.

This court must next consider "the adaptability of the thing attached to the use to which the realty is applied."[63]  Here, the realty was to be used for a geothermal well.  The rig was adapted to the realty for the purpose of drilling the exploratory well.  However, because the well was unsuccessful, there is no current use for the drill rig on the realty.  No further attempts to locate geothermal power will be made with the rig on the realty.  Moreover, had the well been successful, the rig would no longer be needed at the site.  Ultimately, it would have been removed from the site and sent for use at another project,

---

[63] *Id.*

24

whether the well succeeded or failed.  The adaptability factor does not support a finding that the rig is a fixture on the realty.

The final factor for the court to consider is the intent of the party making the attachment.  Here, the debtor's intent was obvious.  It did not intend to make the rig a permanent fixture.  Rather, the debtor sought to use the rig to drill a geothermal well for the production of electricity.  As previously noted, if a successful well had been drilled, the debtor would have had no further need for the rig, and there was absolutely no need to have it permanently installed at the site.

Having considered all three the factors, I conclude that Rig No. 7 was not "affixed" to and was not a fixture on the well.  Accordingly, lien rights cannot be claimed against the rig under A.S. 34.35.125.

Priority of the Statutory Liens

The plaintiffs contend their liens take priority over CFC's duly recorded financing statement because CFC never recorded notice of its lien in the Kvichak Recording District, where the well and rig are located.  They rely on AS 34.35.135, which provides:

> A lien under AS 34.35.125 and 34.35.130 is a preferred lien, prior and superior to a mortgage, conditional sale agreement, attachment, claim or demand, unless the mortgage, conditional sale agreement, attachment, claim, or demand is in writing and recorded in the recorder's office of the recording district where the property is located before the work for which the lien is claimed is

25

started.  A sale, transfer, mortgage, assignment, or attachment made or filed for record after the work is started does not have the effect of postponing the lien.[64]

CFC offers a terse response to the plaintiffs' argument.  It says its security interest is paramount because it filed a financing statement in accordance with AS 45.29.501(b).  CFC contends the mining lien statutes are inapplicable, and maintains the general principles of priority under the UCC – first in time is first in right – govern.  CFC also suggests that the priority statute relating to mechanics' liens, AS 34.35.060, is controlling here.

The plaintiffs have exhaustively addressed each of these arguments and I agree with their analysis.  It is well settled that, if there is a conflict between a general and more specific statute, "the specific section will control over the general," and "the later in time controls over the earlier."[65]  Accordingly, the more specific mining lien priority provisions found in AS 34.35.135 control over the mechanic's lien priority statute, AS 34.35.060.  Further, the provisions of AS 45.09 do not apply to statutory liens, other than agricultural liens.[66]  The UCC does not control in this priority dispute.[67]

---

[64] AS 34.35.135.

[65] *Nelson v. Municipality of Anchorage*, 267 P.3d at 642.

[66] AS 45.29.109(d)(2).

[67] The plaintiffs thoroughly discussed this issue.  *See* Pls.' Mem. in Supp. of Mot. for Summ. J., filed Nov. 21, 2011 (Docket No. 58), at 5-7; Pls.' Resp. to CFC's Mot. for Summ. J., filed Dec. 9, 2011 (Docket No. 69), at 13-14; Pls.' Reply to CFC's Resp. to Pls.' Mot. for Partial Summ. J., filed Dec. 19, 2011 (Docket No. 73), at 13-16.

26

The priority of the plaintiffs' mining liens is governed by AS 34.35.135. Under this statute, liens against mines, wells, and rigs take priority over any other mortgage or claim unless written notice of the mortgage or claim was recorded before the mining work was started, in the recording district where the property is located. CFC has never recorded such a notice in the Kvichak Recording District. Accordingly, under A.S. 34.35.135, the plaintiffs' liens take priority over CFC's security interest.


## TIW's Motion for Partial Summary Judgment

Defendant TIW Corporation also seeks a determination that its mining lien takes priority over CFC's security interest. TIW claims it holds a valid lien against Rig No. 7 and has essentially piggy-backed on the plaintiffs' briefs. TIW's claim of lien is distinguishable from those recorded by the plaintiffs in two respects. First, in its title, the claim of lien designates only AS 34.35.125 (liens against mines and mining claims),[68] while the plaintiffs' lien claims designate "AS 34.35.125 *et seq."* This difference is immaterial. There is no statutory requirement that the lien notice specify the statutory section under which a claim of lien is brought.[69]

---

[68] TIW's Mot. for Partial Summ. J. (Docket No. 61), Ex. 1 at 1.

[69] A mining lien claim must contain a statement of demand and the amount of the demand, the name of the person who employed the lien claimant, a statement of the terms and conditions of employment, the start and stop dates of the work, a description of the property subject to the lien, and the name of the owner of the property. AS 34.35.160(b). The lien notice must also identify the lien claimant. AS 34.35.020(b). None of the form lien notices in AS 34.35 require that the claimant identify the statute under which the lien is claimed. *See* AS 34.35.185(b) (form notice for lien for improvement to chattels); AS 34.35.240(b) (form notice for timber lien claim); AS 34.35.465 (form notice for hospital's, physician's or nurse's lien claim).

27

Second, TIW's lien notice describes the property subject to its lien as the debtor's real property and "that certain wellbore known as the NG-1 (a/k/a Naknek-G1, or Naknek Geothermal Well No. 1) located on a 120-acre drillsite tract."[70] The lien notice states that all of the materials, equipment and labor provided by TIW were "used for the benefit of the above-described well and on the above-described Property."[71] Rig No. 7 is not mentioned anywhere in TIW's lien notice, but the third page of TIW's lien notice states that the lien claim "is upon the whole of said Property . . . and upon all other materials, machinery and supplies owned by the Owner and used in the operations, as well as upon . . . all other personal property and upon all equipment pertaining to said well(s)."[72] With its lien notice, TIW included copies of detailed invoices for its work, as had the plaintiffs.

AS 34.35.160(a)(6) specifies that a mining lien claim must contain "a description of the property on which the lien is claimed, sufficient for identification."[73] Similarly, AS 34.35.020(b) states that a lien notice is sufficient if it describes "the property sought to be charged with the lien sufficient for identification."[74] A case from Alaska's territorial days reiterates this standard – the "yardstick" to apply in determining the adequacy

---

[70] *Id.*, Ex. 1 at 2.

[71] *Id.*, Ex. 1 at 3.

[72] *Id.*

[73] AS 34.35.160(a)(6).

[74] AS 34.35.020(b).

28

of a property description is "whether the [lien] notice sufficiently identifies the property sought to be charged. If this test is met, apparently no amendment [of the lien notice] would be required."[75]

As discussed above, under the definitions found in AS 34.35.170(a), a machine may or may not be considered part of a well, depending upon whether it is "affixed" to the well. However, the mining lien statutes extend to machinery used in the operation of the well, regardless of whether the machinery is affixed to and thus part of the well (AS 34.35.125) or not (AS 34.35.130). The fact that TIW's lien notice fails to specifically mention Rig No. 7 is not fatal. Its notice claims a lien against both the debtor's well and the machinery used in the operation of the well. The rig was a machine used in this manner and, considering its massive size and weight, it is readily identifiable as one such a machine. Within the confines of the pending motions, no one has asserted that TIW did not perform "work" within the scope of AS 34.35.130.[76] I find TIW's lien substantially complies with the requirements for stating a valid lien. Accordingly, its motion for partial summary judgment will be granted, in part, on the same basis as the plaintiffs' motion.[77]

---

[75] *Sullens & Hoss, Inc. v. Farvour*, 14 Alaska 492, 117 F.Supp. 535, 537 (D. Alaska Terr. 1954).

[76] If this point is contested, it is a factual issue left for another day.

[77] With the exception of the named lien claimant and the details of the demand, TIW's lien notice is essentially identical to the first claim of lien recorded by plaintiff BJ Services. *See* Pls.' Mot. for Partial Summ. J. (Docket No. 57), Ex. 1 at 1-4. BJ Services subsequently recorded an amended lien notice which clarified that Rig No. 7 was included in the lien claim. *Id.*, Ex. 1 at 23-27. But for the stay which was imposed upon the filing of the debtor's chapter 11 petition, TIW would be able to make similar amendments to its claim of lien. AS 34.35.020(c).

29

The Joinders to Plaintiffs' Motion

        Tecton Geologic, LLC, GBR Equipment, Inc., Centrifuge Services, LLC, and BC Contractors, Inc., all filed joinders to the plaintiffs' motion for partial summary judgment. They ask the court to conclusively determine that statutory liens arising under the provisions of AS 34.35.125 and 34.35.130 take priority over any lien or security interest which CFC may be claiming. CFC claims a security interest in Rig No. 7, and not the debtor's geothermal well. As discussed above, liens which have been properly claimed against the drill under AS 34.35.130 take priority over CFC's security interest in the rig. However, liens claimed against the well alone under AS 34.35.125 do not encumber the rig. The joinders will be granted, in part, and denied, in part, for this reason.

Conclusion

        There is no dispute as to any material fact herein. For the reasons stated above, the plaintiffs' motion for partial summary judgment will be granted, in part. Their statutory mining liens claimed under AS 34.35.130 take priority over CFC's security interest in Rig No. 7. Any other valid mining liens claimed under AS 34.35.130 would also take priority over CFC's interest. However, mining liens claimed under AS 34.35.125 against the debtor's well alone do not encumber Rig No. 7. The rig is not affixed to the well such that it may be considered part of the well and subject to a mining lien under AS 34.35.125.

The joinders to the plaintiffs' motion, filed by Tecton Geologic, LLC, GBR Equipment, Inc., Centrifuge Services, LLC, and Larry Compton, as chapter 7 trustee for BC Contractors, Inc., will be granted, in part, on the same basis as the plaintiffs' motion, as will TIW's motion for partial summary judgment. CFC's motion for summary judgment will be denied.

An interlocutory order will be entered consistent with this memorandum. A final judgment will be entered after all remaining claims have been fully adjudicated. The court will schedule a status conference so that a deadline for further dispositive motions and a potential trial date can be set.

DATED: March 21, 2012.


BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve: J. Seimers, Esq.
       D. Oesting, Esq.
       M. Boutin, Esq.
       L. Graham, Esq.
       E. LeRoy, Esq.
       M. McLaughlin, Esq.
       G. Parks, Esq.
       D. Schmid, Esq.
       G. Silvey, Esq.
       G. Sleeper, Esq.
       W. R. Spence, Esq.

       3/21/12

31